Eastern District of Kentucky
FILED
MAY 2 5 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-352-GWU

CRYSTAL L. SMITH, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI).[1] The appeal is currently before the Court on cross-motions for summary judgment.

## LAW APPLICABLE TO CHILD'S SSI BENEFITS

As of 1996 strict standards for child's SSI claims were adopted. The Welfare Reform Act, P.L. No. 104-193, 110 Stat. 2105, provides that:

> An individual under the age of eighteen (18) shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

[1]Smith was almost 16 years old as of her alleged onset date (Tr. 58) and was 18 years old when the ALJ's decision was entered (Tr. 27).

Thus, a child's SSI claim can be granted now only if there is a "marked and severe functional limitation(s)." The impairment must meet, medically equal, or functionally equal in severity one of the Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 2. 20 C.F.R. Section 416.924.

The implementing regulations require the agency to determine if the child's impairment(s) meet any Listing of Impairments sections found at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. Section 416.924. If this step is not satisfied, the fact finder is required to consider limitation of specific functioning, broad areas of development or functioning, episodic impairments, and limitations related to medication effects to determine "functional equivalence" to the LOI. Section 416.926a. Functional equivalence is established if the child has one area of extreme functional limitations (i.e., very serious interference with functioning) or two areas of marked limitation (i.e., serious interference with functioning). Id.

**LAW APPLICABLE TO ADULT'S SSI BENEFITS**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v.

Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan,

905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The administrative law judge (ALJ) held that Smith suffered from a history of musculoskeletal pain secondary to a motor vehicle accident, a history of allergies and asthma, specific phobias and post-traumatic stress syndrome. (Tr. 25). Before she attained age 18 in November, 2003, the ALJ found, the plaintiff's impairments did not meet, medically equal or functionally equal any listed impairment so as to satisfy the criteria for child's SSI. (Tr. 25). After November 2, 2003, she was deemed capable of engaging in a significant number of medium level jobs as

identified by a vocational expert (VE). (Tr. 26). Thus, adult's benefits were also denied. (Tr. 27).

Some medical exhibits date from the time frame prior to the alleged onset date. Smith was treated at the Appalachian Regional Healthcare Hospital in May, 2001 with an impression of sprains to the chest wall and right ankle and an abrasion to the forearm; all x-rays were negative and she was said to be in good condition on discharge. (Tr. 119). She sought subsequent treatment for her ankle (Tr. 159, 160, 165); as of September, 2001, however, she was simply to avoid "strenuous exercise such as basketball" (Tr. 157) and the next month was described as having a full range of motion, being released from treatment and returned to "full sports and activities as tolerated" (Tr. 129). The patient had also been seen at the Asthma and Allergy Center where she was given instructions on mold, dust, cigarette smoke and temperature extreme avoidance in late 2000 and early 2001 (Tr. 247, 254, 256, 259, 261, 262, 269); the doctor gave her a note allowing homebound instruction because of allergens, but only for six months (Tr. 252), albeit the Board of Education declined the application (Tr. 247). Finally, one physician addressing her complaints of cough and congestion gave her only a two day school excuse and described her as overall "a healthy young lady" in November, 2000. (Tr. 329). Thus, no permanent

restrictions in excess of those addressed to the VE (Tr. 417) need be implied from the early medical records.

After the July, 2001 onset date until the end of 2002, many medical records pertained to Smith's mental and physical status, yet the same result follows.

Regarding her mental status, Smith was examined consultatively by Gary Maryman in July, 2002, when the 16 year old was described as being oriented, showing no signs of emotional distress, seemingly "fairly mature" as well as friendly and cooperative (Tr. 124), and exhibiting a low average (but still average) IQ (Tr. 126). Maryman felt she showed "excellent persistence" with tasks, had a good ability to interact, and was capable of independent functioning; he assigned her a GAF of 64.[2] (Tr. 127). Cumberland River Comprehensive Care Center records began with an October, 2002 letter from a therapist which cited a GAF of 55 (Tr. 193), but also mentioning that the patient "gives up too easily" and had stopped taking her medication as well as the fact that Smith had not yet seen a psychiatrist (Tr. 194). A medical reviewer found her mental complaints to be less than "severe," (Tr. 195). A medical reviewer examining the record in December, 2002, in contrast, found some "moderate" restrictions (Tr. 223-224), with subsequent commentary (Tr.

---

[2]Scores between 51 and 60 are consistent with "moderate . . . difficulty in social, occupational or school functioning", and those between 61 and 70 are consistent with "some mild symptoms . . . but generally functioning pretty well" as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV).

225) which was ultimately cited to the VE (Tr. 417-418). Subsequently-submitted treatment records indicate that as of July, 2002, her GAF was raised to 68 (Tr. 306) and that, as of October, 2002, she was being motivated to seek out employment. (Tr. 303).

Her allergy treatment at the Allergy and Asthma Center continued in late 2001 and 2002. No new prohibitions were mentioned by the doctor (e.g., Tr. 136, 139, 142, 145, 148), albeit homebound "papers" were signed (Tr. 135, 148) primarily due to cigarette smoking in the school bathrooms.[3] As of June, 2002, the patient did not specifically voice any complaints (Tr. 135).

Musculoskeletal complaints (especially with regard to the right leg) were voiced again in October, 2002 after another motor vehicle accident (Tr. 151). Occasional muscle spasm and shoulder pain was complained of the following February (Tr. 273, 275) but there was a full range of motion and no tenderness of the extremities (Tr. 275).

Two medical reviewers examining the medical exhibits as of December, 2002 concluded that no mental or physical impairment met, medically equaled or functionally equaled any of the Listing of Impairments. (Tr. 202). A functional

---

[3]Subsequent notes make it appear that the school system would not approve the application until early 2003. (Tr. 243, 246).

capacity assessment was consistent with the restrictions cited to the VE. (Tr. 227-234).

Accordingly, it is clear that all medical and mental health exhibits dated prior to 2003 support the ALJ's decision to deny child's SSI benefits and imply no greater restrictions for the future time frame than were considered by the VE.

The 2003 records do not document greater physical restrictions recorded by a physician than were considered (e.g., Tr. 315, 317-323, 339-341, 344) and it was noted that the patient was walking with a normal gait (Tr. 321, 339, 340, 341) and neurologically seemed intact (Tr. 339). Her treating nurse practitioner described her as having no gross musculoskeletal deficits during a May, 2003 examination. (Tr. 377). While a treating source cited a lower GAF in 2003 (Tr. 381), no specific functional restrictions were cited.

Minimal information documented evaluations in 2004.

Reviewing the records as a whole, the administrative decision will be affirmed.

This the 25 day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE